UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – X

CLEOPATRA EGYPT, an adult individual    :

               Plaintiff,   :

    -against-       :

UNITED STATES OF AMERICA**,**    :

          Defendant.   :

   :

   :

– – – – – – – – – – – – – – – – – – – – – – – – – X

Case No. 23CV2930 (JGLC)

THIRD AMENDED
COMPLAINT

Plaintiff, Cleopatra Egypt, through counsel, **WILLIAMS LLP**, for her Third Amended

Complaint against the United States, states as follows:

### PRELIMINARY STATEMENT

Plaintiff Cleopatra Egypt seeks to recover damages for injuries she sustained because

Defendant's dental services fell below the established standard of care. Plaintiff has been a

patient of The Institute of Family Health ("IFH") since 2012. Plaintiff has always maintained

health and dental insurance, and she used her dental insurance when seeking dental care from

IFH. In December 2020, while seeking dental care from IFH, Ms. Egypt was enduring

unspeakable pain, and she asked for an Xray to determine the nature and extent of the pain she

was suffering. IFH refused to take an Xray or to otherwise tend to Ms. Egypt. IFH's refusal to

tend to Ms. Egypt was not grounded in sound medical reasoning. In fact, IFH ignored Ms.

Egypt believing that Ms. Egypt's insurance would not cover an Xray and any treatment the

Xray would have revealed. Because of IFH's tortious conduct, Ms. Egypt endured extreme pain

for seven months that altered her life. In fact, IFH's failure to conduct an Xray to reveal the nature and cause of the pain from which Ms. Egypt was suffering caused other medical harm that Ms. Egypt later suffered. Ms. Egypt seeks damages for the injuries described in this Third Amended Complaint.

## PARTIES

1.      Plaintiff, **CLEOPATRA EGYPT**, is a United States citizen domiciled in New York. Ms. Egypt lives in New York.

2.      Defendant, **THE INSTITUTE OF FAMILY HEALTH**, is a medical facility that is owned and operated by the Department of Health and Human Services. In all important respects, the Department of Health and Human Services operates the Institute of Family Health, and the Institute of Family Health relies on funding from the Department of Health and Human Services to provide medical and dental care to the public. The Institute of Family Health operates at 1824 Madison Avenue, New York, New York 10035, among other locations.

## JURISDICTION AND VENUE

3.      This suit is based on federal question under the Federal Tort Claim Act, 28 U.S.C. § 1346(b)(1) *et seq*.

4.      Venue is proper in this Court because the events that gave rise to this suit occurred in this district.

## SATISFACTION OF CONDITIONS PRECEDENT

5.      Before she brought this suit, Ms. Egypt complied with all conditions precedent, including seeking administrative relief.

## ALLEGATIONS

6.      Ms. Egypt has sought dental treatment from IFH since 2012.

7.      When Ms. Egypt, she usually sought care from Dr. Demetra Atsaves, who is also known as "Dr. D."

8.      IFH runs various advertisements, representing that it provides dental care consistent with sound dental practices to all patients.

9.      IFH is operated by the Department of Health and Human Services ("HHS").

10.     IFH is required to follow HHS's rules and regulations in providing services to patients.

11.     IFH is one of the few dental facilities in the Bronx and Harlem that purports to provide quality dental services in those areas.

12.     Ms. Egypt was insured, and, at all times relevant to this suit, Ms. Egypt was insured.

13.     IFH had Ms. Egypt's insurance information on file.

14.     IFH knows, for example, what coverage Ms. Egypt has and the limitations of Mr. Egypt's coverage.

15.     Ms. Egypt maintains good dental hygiene because she is missing several tooths.

16.     Specifically, Ms. Egypt is missing teeth 2-6, 14, 17-19, and 30-32.

17.     Because Ms. Egypt is missing teeth, she must maintain good dental care to avoid losing other teeth.

18.    Ms. Egypt also wear denture, and she ensures that her dentures are clean and up to date.

19.    On December 23, 2020, while visiting IFH, Ms. Egypt told Dr. D that she needed to replace her partial denture.

20.    Although Dr. D was supposed to be attending to Ms. Egypt, Dr. D refused to continue to see Ms. Egypt.

21.    Dr. D had declined to see Ms. Egypt because he felt that she was not the client that would generate a lot of income for IFH.

22.    Dr. D then passed Ms. Egypt to a resident dentist, Dr. Deborah Tirsun, who was not employed by IFH.

23.    Ms. Egypt did not know that Dr. D was transferring to another dentist.

24.    Ms. Egypt did not consent to be transferred to another dentist.

25.    Dr. Tirsun worked at Mount Sinai Hospital, a hospital that has a different business mandate than IFH.

26.    In any case, Ms. Egypt told Dr. Tirsun that she needed her dentures replaced.

27.    Ms. Egypt gave two reasons for needing her dentures replaced.

28.    Ms. Egypt told Dr. Tirsun that her dentures had become moldy and that it had black film on it.

29.    Ms. Egypt also told Dr. Tirsun that her partial denture was causing her a lot of pain because it had malfunctioned was not functioning properly.

30.    Dr. Tirsun refused to replace Ms. Egypt's dentures.

31.    Dr. Tirsun shortened Ms. Egypt's dentures, smoothed it, and told Ms. Egypt to put in the dentures in another way.

32.    Dr. Tirsun sterilized Ms. Egypt's dentures.

33.    Ms. Egypt continued to endure pain from the dentures.

34.    At the same visit on December 23, 2020, Ms. Egypt told IFH that Tooth Nos. 12 and 15 were causing her extreme pain.

35.    Ms. Egypt begged for an Xray so that IFH could determine (and treat) the cause of the pain she was enduring.

36.    IFH denied the Xray.

37.    IFH claimed that Ms. Egypt could have her dentures sterilized and smoothed or have an Xray—Ms. Egypt could not have both.

38.    Other than the fact that Ms. Tirsun and IFH viewed Ms. Egypt as a patient that could not generate a large amount of money for IFH, neither IFH nor Dr. Tirsun provided a medically-sound reason for allowing Ms. Egypt to continue to suffer in pain.

39.    Dr. Tirsun and IFH told Ms. Egypt that they would schedule a follow-up visit on Tooth Nos. 12 and 15.

40.    One month went by and IFH did not schedule a follow-up visit for Ms. Egypt.

41.    Two months went by and IFH did not schedule a follow-up visit for Ms. Egypt.

42.    Three months went by and IFH did not schedule a follow-up visit for Ms. Egypt.

43.    Four months went by and IFH did not schedule a follow-up visit for Ms. Egypt.

44.    Five months went by and IFH did not schedule a follow-up visit for Ms. Egypt.

45.    Six months went by and IFH did not schedule a follow-up visit for Ms. Egypt.

46.    Seven months went by and IFH did not schedule a follow-up visit for Ms. Egypt.

47.    As month seven turned into month eight, IFH called and told her it was scheduling Ms. Egypt for a cleaning appointment.

48.    The appointment was solely for cleaning, and IFH scheduled it for 26 January 2021.

49.    Ms. Egypt stated that she had asked for an appointment for an Xray to reveal the source of the pain she had been enduring in Tooth Nos. 12 and 15.

50.    As Ms. Egypt suffered in pain, Tooth Nos. 12 and 15 further decayed.

51.    For nearly eight months, the infection from Tooth Nos. 12 and 15 spread to other parts of Ms. Egypt's mouth.

52.    IFH knew that Ms. Egypt wanted to be careful about preserving her remaining teeth because of other teeth she had lost.

53.    Sleepless nights became regular for Ms. Egypt because of the pain from Tooth Nos. 12 and 15.

54.    Ms. Egypt could not eat the food she liked to eat because she could not stand the pain.

55.    Ms. Egypt had to (and she did) change her diet.

56.    Ms. Egypt grew more reclusive and could not be social as she wanted to be because of the pain from Tooth Nos. 12 and 15 and because of the way she felt during the pain.

57.    Ms. Egypt had to lay, eat, and chew a certain way because of the pain she was enduring.

58.    For nearly eight months, Ms. Egypt went from a person who felt confident about herself to someone afraid to interact with the world at large—all because IFH denied her the dental

service to which she was entitled.

59.    IFH knew of the pain Ms. Egypt was enduring.

60.    In fact, Ms. Egypt called IFH constantly, and, in the view of IFH, incessantly, to tell IFH about what was going on with her.

61.    IHF had profiled Ms. Egypt, however, as someone who could not generate substantial financial benefits for IFH, and so, refused to provide her with the treatment she desperately needed.

62.    For the nearly eight months that IFH refused to provide dental services to Ms. Egypt, Ms. Egypt's condition worsened.

63.    Ms. Egypt dental health declined.

64.    Even though Ms. Egypt sought dental treatment from others, the injury that Ms. Egypt had suffered because of IFH's conduct could not be easily fixed.

65.    In fact, the injury from IFH's conduct has not been fixed to this day.

66.    Ms. Egypt is still in pain.

67.    Other than profiling Ms. Egypt because of her financial condition, IFH has not provided a sound medical reason why it denied treatment to Ms. Egypt.

## CLAIM
## (NEGLIGENCE/MEDICAL MALPRACTICE)

68.    Ms. Egypt incorporates the preceding allegations as if they were set out in this Paragraph.

69.    Because of her status as a patient of IFH, IFH owed Ms. Egypt a duty of care to provide dental services to Ms. Egypt that did not fall below the standard of care for other dentists who

provide similar services. In fact, IFH represented to Ms. Egypt that it would schedule a follow-up appointment for Ms. Egypt to provide her with the dental services she had requested.

70.     IFH breached its duty to Ms. Egypt where for nearly eight months, IFH refused to call Ms. Egypt and refused to return Ms. Egypt's call.

71.     IFH is liable to Ms. Egypt for all damages that IFH proximately caused Ms. Egypt to suffer, including damages related to seeking other dental care, damages related the pain and suffering she endured for nearly eight months, and other damages to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Egypt demands judgment against the United States in her favor, for all damages proximately caused by the United States, for pre-and-post judgment interest thereon, and for all relief this Court deems just and proper.

Dated:     New York, New York
           21 October 2024


*RESPECTFULLY SUBMITTED*,

**WILLIAMS LLP**

*/s/ T. Edward Williams, Esq.*